OCT 29 2026 PM2:41
FILED - USDC - FLMD - JAX

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

CHARLIE BERNARD GRIFFIN III
ETHELBERT CHINENYE NWANEGBO

Case No. 3:26-cr-256-HES-SJH
18 U.S.C. § 1349
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 1956(h)
18 U.S.C. § 1957

# INDICTMENT

The Grand Jury charges:

## COUNT ONE
## (Health Care Fraud Conspiracy)

### A. Introduction

At all times material to this Indictment:

1. Medicare was a federally funded health care benefit program that provided medical coverage for persons age 65 and over and for persons under age 65 who were disabled.

2. Medicaid was a health care program funded by both the federal government and the State of Florida that provided medical coverage for certain low-income individuals and families.

3. Medicare and Medicaid were each a "Federal health care program" as defined in 42 U.S.C. § 1320a-7b(f).

4. Medicare, Medicaid, and private insurers were each a "health care

benefit program" as defined in 18 U.S.C. § 24(b).

5. Medicare was divided into four parts: A, B, C, and D. Part D provided supplementary medical insurance benefits that covered the cost of many prescription drugs, but Medicare paid for such a drug only if it was prescribed for a medically accepted indication that facilitated the diagnosis or treatment of illness or injury or the improvement of the functioning of a malformed body member.

6. Like Medicare, Medicaid will only pay reimbursements for drugs that are medically necessary.

7. First Coast Community Development, Inc. ("FCCD"), was a corporation with its principal place of business in Jacksonville, in the Middle District of Florida. FCCD was licensed as a pharmacy by the State of Florida.

8. The defendant CHARLIE BERNARD GRIFFIN III was the owner and operator of FCCD.

B. Charge

Beginning in or about November 2023 and continuing through in or about July 2025, in the Middle District of Florida, and elsewhere, the defendant,

CHARLIE BERNARD GRIFFIN III,

did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown to the Grand Jury, to execute and attempt to execute a scheme and artifice to defraud and to obtain by means of materially false and fraudulent pretenses, representations, and promises money and property owned by

and under the custody and control of a health care benefit program, that is, Medicare, Medicaid, and private insurers in connection with the payment for health care benefits, items, and services, as more fully described herein, in violation of 18 U.S.C. § 1347.

C. Manner and Means

The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, but were not limited to, the following:

1. In or about November 2023, GRIFFIN, on behalf of FCCD, entered into an agreement with a marketing company pursuant to which the company would refer persons to FCCD for the provision of HIV post-exposure prophylactic medications by FCCD.

2. The agreement provided that FCCD would pay the marketing company $200 for every person who was referred to FCCD for the provision of HIV medications but that FCCD would pay this amount only if a claim submitted on behalf of the person was paid by Medicare, Medicaid, or a private insurer.

3. Representatives of the marketing company set up tents and tables in Jacksonville, generally in low-income areas, and offered to provide free, government-sponsored cell phones to anyone who stopped and agreed to provide identifying information.

4. The marketing company paid its representatives a set amount, usually $50, for every person who was referred to FCCD for the provision of HIV

medications but it paid this amount only if a claim submitted on behalf of the person was paid by Medicare, Medicaid, or a private insurer.

5. As a result of the marketing company's agreement with FCCD, while obtaining the personal information necessary for the person to receive the free cell phone, the marketing representatives also obtained health insurance information, including whether the person was covered by Medicare, Medicaid, or a private insurer.

6. The information gathered by the marketing representatives was sent to FCCD, which used the information to generate prescriptions for HIV medications that were authorized by a nurse practitioner who had never seen, spoken with, or performed any manner of evaluation, examination, or test on the persons for whom the prescriptions were issued.

7. To ensure that FCCD's claims for the prescriptions were paid, FCCD falsely and fraudulently used a diagnosis code reflecting that the persons to whom the prescriptions were issued had, or had been exposed to, HIV or a sexually transmitted disease, a false diagnosis that was documented in the medical records of the persons issued the prescriptions.

8. FCCD filled the prescriptions, submitted claims to Medicare, Medicaid, or private insurers for the medications, and, if the claims were paid, was reimbursed for the medications.

9. The actions of GRIFFIN and his co-conspirators caused the submission of tens of thousands of fraudulent claims, resulting in reimbursements from Medicare, Medicaid, and private insurers totaling approximately $51,125,806.

10. GRIFFIN received a total of approximately $14,245,474 in proceeds as a result of his involvement in the offense.

In violation of 18 U.S.C. § 1349.

## COUNT TWO
## (Payment of Kickbacks)

### A. Introduction

Part A of Count One of this Indictment is realleged and incorporated herein.

### B. Charge

Beginning in or about November 2023 and continuing through in or about July 2025, in the Middle District of Florida, and elsewhere, the defendant,

CHARLIE BERNARD GRIFFIN III,

did knowingly and willfully offer to pay and pay remuneration, by kickback, bribe, and rebate, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce the person to refer other persons for the furnishing of an item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare and Medicaid.

C. Manner and Means

Part C of Count One of this Indictment is realleged and incorporated herein.

In violation of 42 U.S.C. § 1320a-7b(b)(2)(A).

## COUNT THREE
## (Money Laundering Conspiracy)

A. Introduction

At all times material to this Indictment:

1. First Coast Community Development, Inc. ("FCCD"), was a corporation with its principal place of business in Jacksonville, in the Middle District of Florida.

2. The defendant CHARLIE BERNARD GRIFFIN III was the owner and operator of FCCD.

3. 224 Management, Inc., was a corporation with its principal place of business in Jacksonville, in the Middle District of Florida.

4. GRIFFIN was the owner and operator of 224 Management, Inc.

5. I2S Matrix LLC was a corporation with its principal place of business in Jacksonville, in the Middle District of Florida.

6. The defendant ETHELBERT CHINENYE NWANEGBO was an accountant and the owner and operator of I2S Matrix LLC.

7. Powerhouse Anchor Management Consulting, Inc. ("PAMC"), was a

corporation with its principal place of business in Jacksonville, in the Middle District of Florida.

8. NWANEGBO was the owner and operator of PAMC.

9. Cherut Enterprises, Inc., was a corporation with its principal place of business in Jacksonville, in the Middle District of Florida.

10. Co-Conspirator A was the owner and operator of Cherut Enterprises, Inc.

11. VyStar Credit Union was a federally insured financial institution whose activities affected interstate commerce.

12. JPMorgan Chase Bank was a federally insured financial institution whose activities affected interstate commerce.

13. Bank of America was a federally insured financial institution whose activities affected interstate commerce.

14. GRIFFIN controlled an account at VyStar Credit Union in the name of FCCD with an account number ending in 1044 (“FCCD x1044”).

15. GRIFFIN controlled an account at VyStar Credit Union in the name of FCCD with an account number ending in 3348 (“FCCD x3348”).

16. GRIFFIN controlled an account at VyStar Credit Union in the name of 224 Management, Inc., with an account number ending in 3156 (“224 Mgt x3156”).

17. GRIFFIN controlled an account at VyStar Credit Union in the name of 224 Management, Inc., with an account number ending in 4481 (“224 Mgt x4481”).

18. GRIFFIN controlled an account at VyStar Credit Union in his name with an account number ending in 2949 ("Griffin x2949").

19. GRIFFIN controlled an account at VyStar Credit Union in his name with an account number ending in 7217 ("Griffin x7217").

20. GRIFFIN controlled an account at JP Morgan Chase Bank in his name with an account number ending in 2852 ("Griffin x2852").

21. NWANEGBO controlled an account at JPMorgan Chase Bank in the name of I2S Matrix LLC with an account number ending in 2387 ("I2S Matrix x2387").

22. NWANEGBO controlled an account at Bank of America in the name of PAMC with an account number ending in 0177 ("PAMC x0177").

23. NWANEGBO controlled an account at Bank of America in the name of PAMC with an account number ending in 0180 ("PAMC x0180").

24. NWANEGBO controlled an account at Bank of America in the name of PAMC with an account number ending in 9405 ("PAMC x9405").

B. Charge

Beginning in or about April 2024 and continuing through in or about November 2025, in the Middle District of Florida, and elsewhere, the defendants,

CHARLIE BERNARD GRIFFIN III,
ETHELBERT CHINENYE NWANEGBO,

did knowingly and intentionally, combine, conspire, confederate, and agree with

each other and with other persons, both known and unknown:

(1) to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, the Federal health care fraud offense alleged in Count One of this Indictment, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

(2) to knowingly engage in, attempt to engage in, and cause monetary transactions by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the transfer, withdrawal, and deposit of funds, such property having been derived from a specified unlawful activity, that is, the Federal health care fraud offense alleged in Count One of this Indictment, knowing that the property involved in the transactions was the proceeds of some criminal activity, in violation of 18 U.S.C. § 1957.

C. Manner and Means

The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, but were not limited to, the following:

1. GRIFFIN and Co-Conspirator A received proceeds of the fraudulent scheme alleged in Count One of this Indictment into financial institution accounts controlled by them.

2. GRIFFIN and Co-Conspirator A transferred and deposited proceeds of the fraudulent scheme to accounts controlled by NWANEGBO.

3. For some of the proceeds, NWANEGBO transferred the funds deposited by GRIFFIN and Co-Conspirator A to other accounts controlled by NWANEGBO.

4. NWANEGBO returned the proceeds to GRIFFIN and Co-Conspirator A by transferring and depositing the proceeds into other accounts controlled by GRIFFIN and Co-Conspirator A and by making cash payments to them, less a money laundering fee of approximately 10%.

In violation of 18 U.S.C. § 1956(h).

**COUNTS FOUR THROUGH TWENTY-FOUR**
**(Engaging in Monetary Transactions Involving Property Derived from Specified Unlawful Activity – GRIFFIN)**

A. Introduction

Part A of Count Three of this Indictment is realleged and incorporated herein.

B. Charge

On or about the dates listed below, in the Middle District of Florida, and elsewhere, the defendant,

CHARLIE BERNARD GRIFFIN III,

did knowingly engage in, attempt to engage in, and cause the following monetary transactions by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the transactions listed below, the amounts being approximate, such property having been derived from a specified unlawful activity, that is, the Federal health care fraud offense alleged in Count One of this Indictment, knowing that the property involved in the transactions was the proceeds of some criminal activity:

| COUNT | DATE | AMOUNT | TRANSACTION |
|---|---|---|---|
| FOUR | 01/25/2024 | $115,000 | Transfer from FCCD x1044 to FCCD x3348 |
| FIVE | 01/29/2024 | $62,500 | Transfer from FCCD x3348 to 224 Mgt x4481 |
| SIX | 02/14/2024 | $75,000 | Transfer from FCCD x1044 to 224 Mgt x4481 |
| SEVEN | 03/26/2024 | $278,000 | Transfer from FCCD x1044 to FCCD x3348 |
| EIGHT | 03/29/2024 | $25,000 | Transfer from FCCD x1044 to 224 Mgt x4481 |
| NINE | 07/24/2024 | $225,000 | Transfer from FCCD x1044 to FCCD x3348 |
| TEN | 08/07/2024 | $375,000 | Wire from 224 Mgt x4481 to I2S Matrix x2387 |

| COUNT | DATE | AMOUNT | TRANSACTION |
|---|---|---|---|
| ELEVEN | 08/16/2024 | $325,000 | Wire from 224 Mgt x4481 to I2S Matrix x2387 |
| TWELVE | 10/18/2024 | $500,000 | Purchase of cashier's check from FCCD x1044 payable to Cherut Enterprises |
| THIRTEEN | 10/28/2024 | $425,000 | Transfer from FCCD x1044 to 224 Mgt x4481 |
| FOURTEEN | 12/25/2024 | $526,020 | Transfer from FCCD x1044 to FCCD x3348 |
| FIFTEEN | 12/30/2024 | $200,000 | Transfer from FCCD x3348 to 224 Mgt x4481 |
| SIXTEEN | 04/01/2025 | $400,000 | Wire from 224 Mgt x3156 to I2S Matrix x2387 |
| SEVENTEEN | 04/23/2025 | $3,500,000 | Transfer from FCCD x1044 to 224 Mgt x4481 |
| EIGHTEEN | 04/25/2025 | $800,000 | Wire from 224 Mgt x4481 to I2S Matrix x2387 |
| NINETEEN | 04/25/2025 | $1,372,758 | Wire from 224 Mgt x4481 to a title company |
| TWENTY | 05/09/2025 | $824,910 | Wire from 224 Mgt x3156 to I2S Matrix x2387 |
| TWENTY-ONE | 05/20/2025 | $1,000,000 | Transfer from FCCD x1044 to 224 Mgt x3348 |
| TWENTY-TWO | 06/04/2025 | $726,014 | Wire from 224 Mgt x4481 to I2S Matrix x2387 |
| TWENTY-THREE | 06/11/2025 | $927,500 | Transfer from FCCD x1044 to FCCD x3348 |
| TWENTY-FOUR | 07/03/2025 | $712,000 | Wire from 224 Mgt x3156 to I2S Matrix x2387 |

All in violation of 18 U.S.C. §§ 1957 and 2.

## COUNTS TWENTY-FIVE THROUGH THIRTY-ONE
**(Engaging in Monetary Transactions Involving Property Derived from Specified Unlawful Activity – NWANEGBO)**

A. Introduction

Part A of Count Three of this Indictment is realleged and incorporated herein.

B. Charge

On or about the dates listed below, in the Middle District of Florida, and elsewhere, the defendant,

ETHELBERT CHINENYE NWANEGBO,

did knowingly engage in, attempt to engage in, and cause the following monetary transactions by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the transactions listed below, the amounts being approximate, such property having been derived from a specified unlawful activity, that is, the Federal health care fraud offense alleged in Count One of this Indictment, knowing that the property involved in the transactions was the proceeds of some criminal activity:

| COUNT | DATE | AMOUNT | TRANSACTION |
|---|---|---|---|
| TWENTY-FIVE | 07/14/2025 | $25,000 | Wire from I2S Matrix x2387 to a title company |
| TWENTY-SIX | 08/01/2025 | $15,000 | Cash withdrawal from I2S Matrix x2387 |
| TWENTY-SEVEN | 08/05/2025 | $301,000 | Wire from I2S Matrix x2387 to PAMC x0177 |
| TWENTY-EIGHT | 09/04/2025 | $15,000 | Cash withdrawal from I2S Matrix x2387 |

| COUNT | DATE | AMOUNT | TRANSACTION |
|---|---|---|---|
| TWENTY-NINE | 09/17/2025 | $15,000 | Cash withdrawal from I2S Matrix x2387 |
| THIRTY | 10/02/2025 | $25,000 | Cash withdrawal from I2S Matrix x2387 |
| THIRTY-ONE | 11/21/2025 | $15,000 | Cash withdrawal from I2S Matrix x2387 |

All in violation of 18 U.S.C. §§ 1957 and 2.

## FORFEITURE

1. The allegations contained in Counts One through Thirty-One are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(1) and (7).

2. Upon conviction of a conspiracy to violate 18 U.S.C. § 1347, in violation of 18 U.S.C. § 1349, and/or a conviction of a violation of 42 U.S.C. § 1320a-7b(b)(2)(A), CHARLIE BERNARD GRIFFIN III shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3. Upon conviction of a conspiracy to violate 18 U.S.C. §§ 1956(a)(1)(B)(i) and/or 1957, in violation of 18 U.S.C. § 1956(h), and/or a conviction of a violation of 18 U.S.C. § 1957, the defendants shall forfeit to the United States, pursuant to 18

U.S.C. § 982(a)(1), any property, real or personal, involved in the offense or any property traceable to such property.

4. The property to be forfeited includes, but is not limited to, the following:

a. An order of forfeiture as to CHARLIE BERNARD GRIFFIN III for at least $14,245,474, which represents the proceeds obtained as a result of the offense charged in Count One;

b. An order of forfeiture as to CHARLIE BERNARD GRIFFIN III for at least $17,807,628.14, which represents property involved in the offenses charged in Counts Three through Twenty-Four;

c. An order of forfeiture as to ETHELBERT CHINENYE NWANEGBO for at least $6,068,540.50, which represents property involved in the offenses charged in Counts Three and Twenty-Five through Thirty-One;

d. $24,649.29 seized from account number ending in 3745, held in the name of 224 Assets Holding, Inc. at VyStar Credit Union;

e. $341,151.46 seized from account number ending in 4481, held in the name of 224 Management, Inc. at VyStar Credit Union;

f. $105,543.90 seized from account number ending in 3156, held in the name of 224 Management, Inc. at VyStar Credit Union;

g. $227,181.95 seized from account number ending in 1936, held in the name of 224 Management, Inc. at VyStar Credit Union;

h. $432,076.62 seized from account number ending in 3257, held in the name of 224 Real Estate LLC at VyStar Credit Union;

i. $64,556.53 seized from account number ending in 2949, held in the name of Charlie Griffin at VyStar Credit Union;

j. $52,534.92 seized from account number ending in 7217, held in the name of Charlie Griffin at VyStar Credit Union;

k. $21,288.43 seized from account number ending in 5890, held in the name of Charlie Griffin at VyStar Credit Union;

l. $1,083,569.67 seized from account number ending in 3348, held in the name of First Coast Community Development, Inc. at VyStar Credit Union;

m. $1,943,059.57 seized from account number ending in 7483, held in the name of First Coast Community Development, Inc. at VyStar Credit Union;

n. $1,261,320.58 seized from account number ending in 3204, held in the name of Charlie Griffin at PNC Bank;

o. $138,867.65 seized from account number ending in 2852, held in the name of Charlie Griffin at JP Morgan Chase Bank;

p. Cashier's check numbered 6208688 in the amount of $1,787,000, funded by account number ending in 3156, held in the name of 224 Management, Inc. at VyStar Credit Union (previously cashier's checks numbered 6163778, 6163780, 6163775, and 6163772);

q. Cashier's check numbered 6208694 in the amount of $500,000, funded by account number ending in 7483, held in the name of First Coast Community Development, Inc. at VyStar Credit Union (previously cashier's check numbered 6163768);

r. Cashier's check numbered 6208693 in the amount of $200,000, funded by account number ending in 7217, held in the name of Charlie Griffin at VyStar Credit Union (previously cashier's checks numbered 6163761, 6163758, 6163762, 6163759);

s. Real property, including all improvements thereon and appurtenances thereto, located at 525 N Newnan Street, Jacksonville, Florida 32202, the legal description for which is: West 2/3 of North 1/2 of Lot Four (4), Block Sixty-three (63) Hart's Map of Jacksonville, of the former public records of Duval County, Florida

Parcel Identification Number: 073896-0000

Record Owner: 224 Real Estate, LLC, a Florida Limited Liability Company, 400 East Bay Street, Suite 306, Jacksonville, Florida 32202;

t. Real property, including all improvements thereon and appurtenances thereto, located at 12349 Cadley Circle, Jacksonville, Florida 32219, the legal description for which is: Lot 202, VILLAGES OF WESTPORT- PHASE 1, according to the plat thereof, recorded in Plat Book 60, Page(s) 101 through 115 of the Public Records of Duval County, Florida

Parcel Identification Number: 003784-1055

Record Owner: 224 Real Estate, LLC, a Florida Limited Liability Company, 400 East Bay Street, Suite 306, Jacksonville, Florida 32202;

u. Real property, including all improvements thereon and appurtenances thereto, located at 4368 Boat Club Drive, Jacksonville, Florida 32277, the legal description for which is: Lot 12, ST. JOHNS CAY, according to the plat thereof recorded at Plat Book 51, Pages 53, 53A through 53D, in the Public Records of Duval County, Florida

Parcel Identification Number: 108906-8110

Record Owner: Charlie B. Griffin, III;

v. 2022 Black Cadillac Escalade ESV Sport Platinum 4D SUV 4WD VIN: 1GYS4RKL3NR152750;

w. 2025 Black Toyota Camry LE Hybrid 4D Sedan FWD VIN: 4T1DAACK7SU032565;

x. 2025 White Toyota Crown Signia Limited 4D SUV AWD VIN: JTDACAAJ4S3008600; and

y. 2025 Blue Genesis GV80 Coupe VIN: KMUJBESC6SU277599.

5. If any of the property described above, as a result of any act or omission of a defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL.

Foreperson

GREGORY W. KEHOE
United States Attorney

By: ______________________
ARNOLD B. CORSMEIER
Assistant United States Attorney

By: ______________________
CHRISTOPHER F. MURRAY
Assistant United States Attorney
Criminal Chief, South

FORM OBD-34
10/27/26 Revised

No.

**UNITED STATES DISTRICT COURT**
Middle District of Florida
Jacksonville Division

THE UNITED STATES OF AMERICA

vs.

CHARLIE BERNARD GRIFFIN III
ETHELBERT CHINENYE NWANEGBO

**INDICTMENT**

Violations: 18 U.S.C. § 1349
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 1956(h)
18 U.S.C. § 1957

A true bill,

Foreperson

Filed in open court this 29th day

of October, 2026.

Clerk

Bail $____________________

GPO 863 525